69   29
104  114

69   29
128  587

PATRICK J. WALSH v. WILLIAM J. K. MARTIN AND ABRAHAM MARTIN.

*Lease—Assignment—Indorsement amounting to new letting of premises.*

1. The *delivery* of the lease, under which a tenant occupies a building, to the purchaser of his business, who is placed in possession of the leased premises, constitutes in law an assignment to the vendee of all of the rights of the tenant under the lease, in the absence of a forfeiture clause in case of subletting.

2. An indorsement on a lease giving the lessee the privilege of occupying the leased premises for 10 years from a given date, at the same rental, and providing that all buildings and improvements then or thereafter to be erected on the premises should be the property of the lessor, as part of the consideration for extending the lease, over and above the rental specified therein (which improvements were afterwards made to the value of $1,500), amounts to a new lease for the term mentioned.

Error to St. Clair. (Stevens, J.) Argued January 27, 1888. Decided March 2, 1888.

*Assumpsit.* Defendants bring error. Reversed. The facts are stated in the opinion.

*Chadwick & Wood,* for appellants.

*Atkinson & Vance,* for plaintiff.

LONG, J. This action was brought before a justice of the peace of St. Clair county, to recover for the use and occupation of a certain store and lot in the city of Port Huron.

The declaration was upon the common counts in *assumpsit—*

"For the use and occupation of a certain store and premises on the east side of Huron avenue in the city of Port Huron, being the three-story brick building now occupied by defendants."

The defendants pleaded the general issue, and gave notice—

"That they were not, and never had been, tenants of the plaintiff, or occupied the store mentioned in his declaration under him or any lease or agreement from him or with him, but are in possession of the same under one George R. Shatto, who holds a lease thereof from said plaintiff, now in full force and valid and subsisting."

The cause was tried in justice's court, and judgment rendered therein in favor of the plaintiff. Defendants appealed to the circuit court for the county of St. Clair, where the cause was brought on for trial, and judgment rendered for plaintiff. Defendants now bring the case into this Court on writ of error.

On the trial of the cause in the circuit, it appeared that plaintiff leased the premises in question to one George R. Shatto for the term of three years, by a written lease as follows:

"It is hereby agreed between P. J. Walsh, of Detroit, Michigan, of the first part, and G. R. Shatto, of Port Huron, Michigan, of the second part, as follows:

"The said P. J. Walsh, in consideration of the rents and covenants herein specified, doth hereby let and lease to the said G. R. Shatto the three (3) story brick building now occupied by him, situated on the east side of Huron avenue, Port Huron, Michigan, for a term of three (3) years from and after the fifteenth day of October, 1877, on the terms and conditions hereinafter mentioned, to be occupied for mercantile purposes: *Provided*, That in case any rent shall be due and unpaid, or if default shall be made in any of the covenants herein contained, then it shall be lawful for the said P. J. Walsh, or his certain attorney, to re-enter into and repossess the said premises, and the said party of the second part, and each and every other occupant, to remove and put out.

"And the said G. R. Shatto doth hereby hire the said premises for the term of three (3) years, as above mentioned, and doth covenant and promise to pay to the said P. J. Walsh the annual rent of six hundred dollars, in monthly installments to wit: The first installment to be paid on the

fifteenth day of October, 1877, and monthly in advance thereafter; and also that he will, at his own expense, during the continuance of this lease, keep the said premises and every part thereof in as good repair, and will not re-lease or assign this lease without the written consent of the party of first part, and, at the expiration of the term, yield and deliver up the same in like condition as when taken, reasonable use and wear thereof and damage by the elements excepted.

"And the said party of the first part doth covenant that the said party of the second part, on paying the aforesaid installments, and performing all the covenants aforesaid, shall and may peaceably and quietly have, hold, and enjoy the said demised premises for the term aforesaid.

"Witness our hands and seals, this twenty-sixth day of November, 1877."

The following indorsements appeared upon the lease:

"It is mutually agreed by and between the parties hereto that the within lease is to be extended, without altering the conditions thereof, until October 15, A. D. 1884.

"*Port Huron, Mich., March 1, 1879.*"

"For a valuable consideration I hereby give G. R. Shatto the privilege of occupying the store mentioned in this lease, and grounds in the rear, for ten years from 1884, the rent to be the same as at present. All buildings and improvements now on said premises, or hereafter erected, to be the property of the said P. J. Walsh, as part of the consideration for extending lease, over and above the rental specified in the within lease.

"*Dated, Port Huron, August 2, 1881.*"

This lease and the indorsements above set forth were signed by G. R. Shatto and Robert Walsh, agent for plaintiff.

Mr. Shatto took possession of the premises under the lease, and occupied up to the time the defendants went into possession, about the middle of January, 1886. Mr. Shatto paid rent up to this time, when he sold out his stock and good-will in the business to defendants, who have since occupied the premises, and paid the rent stipulated in the lease; such rent being paid under an agreement that it should not affect the rights of the parties in this action.

Within a few days after defendants went into possession of

the premises, Messrs. Atkinson & Vance, attorneys for plaintiff, wrote defendants that Mr. Walsh had consulted them about the Shatto lease, and say,—

"It appears to have expired, and he wishes to know whether you wish to rent the property, and, if so, please advise us, or notify him at Detroit."

This letter was received by defendants, who made no reply, when they sent them the following letter:

"February 16, 1887.

"MESSRS. MARTIN BROS.,
            "Port Huron.

"*Dear Sirs:* On the twentieth of January we wrote you requesting a conference regarding the premises you occupy belonging to P. J. Walsh, Detroit, and advising you at the same time that Mr. Shatto's lease had expired under its terms. Since that time we have called twice at your place of business, and failed to see you. You will now please take notice that the monthly rental of the premises you occupy will be $66.66, or at the rate of $800 per year. You can pay the same to us, as Mr. Walsh's agent if you so desire. We regret your discourtesy in not answering our letter.

"Very respectfully,        ATKINSON & VANCE."

On the trial of the cause Robert Walsh, who signed the lease and indorsements as agent for the plaintiff, was called as a witness for plaintiff, and testified, under defendants' objection:

"Mr. Shatto came to me and told me he would like to have more room; he hadn't enough; and if I paid so much towards extending the store he would extend the store so many feet further back the full width of the store, and he wanted $150. He said it would cost so much for stone and different articles. I told him if that was the case, and they would put up a good building, we would be willing to do so. Finally I paid him $150, and he went on with the building. That was the first extension."

Before the second indorsement was written on the lease, Shatto stated to witness that he wanted a cellar to put butter in, and have it lighted; and if they would give him an extension of the lease for ten years he would put up a build-

ing there. This was in July or August, 1881. Shatto then went off, and came back with the last indorsement written on the lease,—

" And said it was just the same as the lease, with the exception that it was an extension of time."

It is conceded that Shatto then built an addition in the rear of said building as an extension thereto, with basement, and two stories above, of 33 feet by 25 in dimensions, and with a tin or iron roof, being the same width as the main building, under the last agreement; that Shatto expended and paid over $1,500 in making such addition and improvements; that they were worth what they cost, and were material and necessary to make the building suitable for business, and added materially to the permanent, intrinsic, and rental value of the same; that Shatto has given no notice to plaintiff of surrender of his lease, nor has plaintiff given Shatto any notice that he, plaintiff, had terminated the same, or demanded surrender and possession, except so far as notice to Martin Bros. may be held such notice. Plaintiff never consented to defendants' going into possession of the premises, or to a transfer to defendants of the Shatto lease.

No assignment in writing of the Shatto lease to defendants is shown, though the lease with the indorsements thereon was turned over to them when they went into possesion.

It was conceded, if plaintiff was entitled to recover he should receive $180.52.

At the close of the trial the defendants' counsel requested the court to direct the verdict for the defendants; but at request of the plaintiff's counsel the court directed a verdict for the plaintiff for $180.52.

Several errors are assigned by the defendants. There is, however, but one question in the case for our consideration: Did the indorsement made on the lease and signed by the parties under date of August 2, 1881, operate to extend the

old lease, with all the covenants and stipulations therein contained, so that the lease became forfeited when transferred to the defendants by Shatto without the written consent of the lessor?

The first indorsement was clearly intended to, and did, extend the old lease to October 15, 1884, without altering its conditions. The old lease, with these indorsements, was turned over to the defendants by Shatto when they purchased his business and took possession of the premises. This constituted in law an assignment to defendants of all the rights Shatto had under the old lease, or under the indorsements made thereon, signed by the parties; and the defendants would be entitled to hold the premises under the same rental as Shatto, unless the forfeiture clause in the old lease was operative. *I., M. & C. Union v. Railway Co.*, 45 Ind. 281; *Acker v. Witherell*, 4 Hill, 112; *Bedford v. Terhune*, 30 N. Y. 457.

The rights of the parties must therefore be determined upon the construction given to the indorsement made on the lease under date of August 2, 1881. Shatto was still occupying the premises under the terms and conditions of the old lease, as extended by the indorsement of March 1, 1879, when this new arrangement was made. He then proposed to extend the building, and, with consent of plaintiff's agent, put up an addition costing some $1,500. This extension is conceded to be worth what it cost, and is a valuable improvement, adding to the intrinsic value of the property, and to its rental value. Had Shatto remained in possession, he could not have been compelled to pay any more rental than he had under the terms of the old lease, and he could have occupied for the full term of 10 years from October 15, 1884, at the end of which time all the buildings erected and improvements made were to be the property of the lessor. The writing contains no exceptions or reservations, and does not import to be an extension of the previous lease. New

and valuable considerations entered into it. More property was included, and the lessor was getting valuable and permanent improvements made, without costs to himself. The agent of the plaintiff had taken the precaution, when making the indorsement under date of March 1, 1879, to stipulate in that, "the within lease is to be extended without altering the conditions thereof." No such stipulation appears in this indorsement of August 2, 1881.

On the trial, plaintiff offered evidence to show that Shatto said, when he came to Robert Walsh with the indorsement, that "it was just the same as the lease, with the exception that it was an extension of time." The terms of this lease, however, could not be changed by parol evidence. It must speak for itself. We must therefore construe this last indorsement as a new leasing, and not as an extension of the old lease. *Donkersley v. Levy*, 38 Mich. 59; *Conkling v. Tuttle*, 52 Id. 632 (18 N. W. Rep. 391). It superseded and canceled the old lease. It contained no prohibition against subletting, re-leasing, or assigning, and is therefore not avoided by the assignment to defendants. *Robinson v. Perry*, 21 Ga. 183. The defendants took under the assignment all the interest which Shatto had, and could not be compelled to pay any greater rental than Shatto would have paid if he had remained in.

The judgment of the court below is reversed, and judgment entered in this Court for defendants, with costs of both courts.

The other Justices concurred.