## SLOAN v. SLOAN.
### No. 777.

Municipal Court of Appeals for the District of Columbia.

Argued April 25, 1949.

Decided June 3, 1949.
Rehearing Denied July 6, 1949.

I. H. Halpern, Washington, D. C., for appellant.

H. Max Ammerman, Washington, D. C., for appellee.

Before CAYTON, Chief Judge, and HOOD and CLAGETT, Associate Judges.

CAYTON, Chief Judge.

The parties are husband and wife. On May 28, 1947 they signed a separation agreement under which the husband agreed to convey all his right and interest in the couple's jointly owned property, to permit his wife absolute custody of their child, to pay $100 per month for its support, and to pay part of her attorney's fees. The contract provided that "the husband agrees to sign any and all papers necessary to effectuate the transfer of said property to the wife or to any other party she may designate. The proceeds therefrom shall *unconditionally and irrevocably go to the wife.*" By the agreement the wife settled all her claims to alimony and support, waived her dower rights and agreed not to pledge her husband's credit.

On the same night the agreement was signed Mrs. Sloan received a call from her attorney requesting that she appear at his office the next day for a further conference. While there she signed an "Addenda to the Agreement" of the previous day. In exchange for the nominal consideration of one dollar, she agreed to "give" her husband $2,250 out of the proceeds from the realty sale and promised to instruct the title company, at the time of settlement, to pay that sum to her husband's attorney. Mr. Sloan, in addition to the nominal consideration of one dollar, promised "that on, to wit, May 29, 1947, he will vacate and leave the premises at 4509 Argyle Terrace, N.W., and remove all of his personal belongings therefrom."

Ten months later Mrs. Sloan filed this action for breach of contract against her husband, charging that he had retained $2,250 from the proceeds of the sale which belonged to her under the May 28 agreement and also that he had failed to make certain of the monthly payments due for the support of the child. After a trial without a jury, the trial judge concluded "That upon the facts and upon the law, there must be a finding in favor of the plaintiff in the matter of her claim for $2,250.00 withheld by the defendant under the alleged valid paper writing entitled 'Addenda to Agreement,' because of the absence of any valid consideration for the execution by the plaintiff of said second agreement dated May 29, 1947, and therefore under the original agreement of May 28, 1947, she is entitled to full and complete ownership of the improved real property * * * or to the total proceeds of sale thereof." The court also made a finding for the plaintiff in respect to certain monthly payments due and interest thereon.

Appellant was represented in these proceedings by three different attorneys, one at the time of the disputed agreements through the filing of the answer to Mrs. Sloan's complaint, by another during the trial, and by his present counsel who came into the case after the finding for plaintiff was rendered. The present counsel first appeared when he filed a motion for new trial, "or for reopening action and receive further evidence." Upon denial of this and other motions, he noted this appeal.

A primary issue is whether the second agreement was valid and binding on the plaintiff. Appellant argues that there was an integral consideration for both contracts, while appellee contends that the two agreements reflected separate transactions.

 The consideration of one dollar (which plaintiff testified she never received) was of course only nominal. And a familiar principle of contract law is that courts will not inquire as to the adequacy of the consideration. This applies even when the consideration of one dollar is paid or alleged to have been paid in exchange for a promise of considerable value.[1] "A pecuniary consideration is capable of exact and definite admeasurement, its value is fixed and unalterable, and there cannot be any uncertainty as to its adequacy or inadequacy. * * * A contract for the exchange of unequal sums of money at the same time, or at different times, when the element of time is no equivalent, is not binding at common law."[2] Standing by itself the exchange of one dollar for $2,250 is such grossly inadequate consideration as to preclude upholding a contract on that basis.

██ The only advantage in the second agreement, moving from husband to wife, aside from the nominal consideration of one dollar, was the agreement to vacate the premises of their jointly owned house the same date as the agreement, May 29, 1947. Whether this was actually intended by the parties as written is not in issue. It is admitted that he did not so move until about June 15, constituting a literal breach of contract on his part. Even when considered as allowing Mr. Sloan a reasonable time to vacate the premises, this part of the agreement may reasonably be regarded as only a new promise to do what he had already engaged to do under the first agreement. "It of course goes without saying that the promise to do a thing which the

[1] 1 Williston, Contracts, Rev.Ed. § 115.
[2] 12 Am.Jur., Contracts § 123; Williston, supra, § 115; Robertson v. Garvan, D.C.S.D.N.Y., 270 F. 643, and cases cited.

promisor is already bound to do is not a good consideration upon which to found another promise * * *." [3]

The May 29 agreement provided that of the $3,000 deposit on the sale of the house, $1,000 was to be held by the agent, and $2,000 by Mrs. Sloan's attorneys. Presumably this was done, but the record is silent on the subject. The title company settlement sheet was not produced, (or, if produced is not in the record before us) and there is nothing from which we can learn how the proceeds of the sale were distributed.

■ We can assume from the record, skimpy though it is, that the settlement at the title company did not take place without Mrs. Sloan being present, or represented, and that the title company would not have disbursed the $2,250 without her authority. If therefore, she authorized such disbursement, the second agreement was no longer executory, but became fully executed by her, and she could not be permitted, ten months later, to change her mind. "If one makes an executory contract which lacks consideration, he may avoid it when called on for performance, but if he executes the contract by performance he cannot undo his voluntary act." [4]

■ Thus, even if the second agreement was originally invalid for want of consideration, Mrs. Sloan cannot be allowed to undo that which by her performance had become a completely executed agreement. And because of such performance the judge's ruling as to want of consideration, correct though it was as to an executory contract, would be inapplicable on a showing that Mrs. Sloan had proceeded with performance thereof. The rule has no application to executed contracts, for the reason that performance, "either partial or in full, supplies a sufficient consideration to support all its provisions." [5] Thus the question of consideration, its adequacy or absence becomes immaterial. [6]

We do not say or even intimate what the ultimate decision should be, for the factual situation as reflected in the record before us is tangled in doubt and confusion, and reveals important gaps which must be filled in by fuller and clearer testimony, to the end that the real merits of the transaction may be decided.

■ Appellant criticizes the method of computing interest adopted by the judge, but we note that such method was more favorable to appellant than the method for which his counsel contends.

Reversed, with instructions to award a new trial.

[3] Littlepage v. Neale Publishing Co., 34 App.D.C. 257, 264.

[4] 17 C.J.S., Contracts, § 71, and cases cited.

[5] Welsh v. Barnes-Duluth Shipbuilding Co., 221 Minn. 37, 21 N.W.2d 43, 47.

[6] Dallas Hotel Co. v. Buffington, Tex. Civ.App., 294 S.W. 610. See also: Farrington v. State of Tennessee, 95 U.S. 679, 24 L.Ed. 558; Bank of United States v. Lee, Fed.Cas.No.922, 5 Cranch C.C. 319, 5 D.C. 319, affirmed 13 Pet. 107, 38 U.S. 107, 10 L.Ed. 81; Harvester King Co. v. Mitchell, Lewis & Staver Co., C. C.Or., 89 F. 173; Society of Missionary Catechists of our Blessed Lady of Victory v. Bradley, 112 Ind.App. 556, 44 N.E.2d 209; King v. Bank of Pangburn, 150 Ark. 138, 233 S.W. 920; Lamb's Estate v. Morrow, 140 Iowa 89, 117 N.W. 1118, 18 L.R.A.,N.S., 226; 1 Williston, Contracts, Rev.Ed., 130 (a).